UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 13-597(DSD/JJK)

Feed Management Systems, Inc.,

            Plaintiff,

v.                                            **ORDER**

Comco Systems, Inc. and
Comco Manufacturing, Ltd.,

            Defendants.


      Richard G. Morgan, Esq., Steven L. Reitenour, Esq. and
      Bowman & Brooke, LLP, 150 South Fifth Street, Suite 3000,
      Minneapolis, MN 55402, counsel for plaintiff.

      C. Bradford Marsh, Esq. and Swift, Currie, McGhee & Hiers
      LLP, 1355 Peachtree Street N.E., Suite 300, Atlanta, GA
      30309 and Stephen P. Laitinen, Esq. and Larson King, LLP,
      30 East Seventh Street, Suite 2800, St. Paul, MN 55101,
      counsel for defendants.


      This matter is before the court upon the cross-motions for

summary judgment by plaintiff Feed Management Systems, Inc. (FMS)

and defendants Comco Systems, Inc. and Comco Manufacturing, Ltd.

(collectively, Comco).  Based on a review of the file, record, and

proceedings herein, and for the following reasons, the court grants

both motions in part.


                           **BACKGROUND**

      This contract dispute arises out of the 2008 Management

Agreement between FMS and Comco.  FMS seeks reimbursement of

attorney's fees and other expenses it incurred during a lawsuit

involving non-parties Brilliant Alternatives, Inc. and Robert Brill (collectively, Brill).

## I.   Comco-Brill Agreement

The relationship between FMS and Comco began in 2008, when Comco entered into a contract with Brill (Comco-Brill Agreement), to acquire Brill's rights to certain software products and to an international network of software distributors.  Reitenour Decl. Ex. B §§ 2.1-2.3.  In return, Comco agreed to market and distribute the products and to pay Brill royalties and a monthly contractor fee.  Id. §§ 4.4, 8.1, art. 7.

The Comco-Brill Agreement also granted Comco control over Brill's involvement in an ongoing lawsuit against FMS (FMS Litigation), which arose out of a 1999 distribution agreement with FMS.  Id. § 5.2; see id. Ex. A, at 1-2.  Pursuant to the Comco-Brill Agreement, Comco participated in settlement negotiations on Brill's behalf.  Reddekopp Aff. ¶ 4.  During the negotiations, FMS and Comco discussed the potential for a business relationship regarding the Brill Products and Distribution Network.  Id. ¶ 5, 7. Those discussions led to the Management Agreement, which FMS and Comco executed in July 2008.  Id. ¶ 8-14.

## II.  Management Agreement

The Management Agreement granted FMS managerial control over Comco's rights and duties under the Comco-Brill Agreement.  Id. ¶ 10.  Specifically, FMS was required to "manage administration,

operations and marketing in connection" with the products and distribution network.  Reitenour Decl. Ex. E., at 1.  To fulfill its obligations under the Management Agreement, FMS agreed to perform a number of "Services," which included (1) "billing, collecting, and paying the agents which comprise the Distribution Network," and (2) "providing work direction to Brill ... in order to enable Brill to fulfill his obligations under the [Comco-Brill] Agreement."  Id. § 2(a).

The Management Agreement contained a provision requiring Comco to indemnify FMS

> from and against any and all losses, costs, expenses, claims, damages and liabilities whatsoever ... to which [FMS] may become subject under any applicable law, or any claim made by any third party, or otherwise, to the extent they relate to or arise out of or in connection with the performance of the Services contemplated by this Agreement or the engagement of FMS pursuant to, and the performance by FMS of the Services contemplated by, this Agreement.

Id. § 5.  Comco agreed to reimburse FMS for "all reasonable costs and expenses ... including reasonable attorneys' fees and expenses ... incurred in connection with the investigation of, preparation for or defense of any pending or threatened claim for which [FMS] would be entitled to indemnification ... or any action or proceeding arising therefrom ...."  Id.

Comco was also required to secure a release of FMS when settling certain actions:

> [Comco] agrees that it will not, without the prior written consent of [FMS], settle, compromise or consent

3

to the entry of any judgment in any pending or threatened
claim, action or proceeding relating to the matters
contemplated hereby (if [FMS] is a party thereto or has
been actually threatened to be made a party thereto)
unless such settlement, compromise or consent includes an
unconditional release of [FMS] ....

<u>Id.</u>  The parties agreed that these provisions would survive the
termination of the Management Agreement.  <u>Id.</u> § 6.  FMS terminated
the agreement on March 16, 2009.  Laitinen Aff. Ex. 6.

**III.  Comco-Brill and Comco-FMS Litigation**

Comco terminated the Comco-Brill Agreement on November 3,
2008, severing its relationship with Brill.  <u>Id.</u> Ex. 5.  Brill then
filed suit against Comco on January 28, 2009 (Comco-Brill
Litigation).  <u>See</u> Compl. Ex. 4.  Comco reached a settlement with
Brill on July 30, 2009.  <u>See</u> <u>Brilliant Alternatives, Inc. v. Feed</u>
<u>Mgmt. Sys., Inc.</u>, No. 1:09-cv-0238 (N.D. Ga. July 30, 2009), ECF
No. 19.

Brill then filed a complaint against FMS[1] on August 27, 2009
(Brill-FMS Litigation).  <u>See</u> Reitenour Decl. Ex. F.  Brill accused
FMS of engaging in intentional misconduct under the Management
Agreement and alleged that the Management Agreement constituted an
impermissible assignment of Comco's rights and obligations under
the Comco-Brill Agreement.  <u>See generally</u> <u>id.</u> ¶¶ 56-138.  The
complaint sought $1,500,000 in compensatory damages, $3,000,000 in
punitive damages, and attorney's fees.  <u>Id.</u>  FMS answered the

---

[1] Brill also brought claims against Richard Reynertson, the
CEO of FMS.  The court refers to Reynertson and FMS collectively.

4

complaint on October 12, 2009, and asserted counterclaims alleging that Brill violated the settlement agreement from the FMS Litigation.  Reitenour Decl. Ex. BB ¶¶ 13-28.

## IV.  Financing for the Brill-FMS Litigation

On September 8, 2009, FMS requested that Comco provide indemnification under the Management Agreement for attorney's fees and other expenses resulting from the Brill-FMS Litigation. Reitenour Decl. Ex. G.  Comco denied the request, arguing that the indemnity provision does not apply to the claims asserted by Brill because the claims did not relate to the performance of services listed in the Management Agreement.  Id. Ex. H, at 3-4.  Comco also argued that indemnification would violate public policy because Brill asserted claims premised on intentional misconduct.  Id. at 2-3.

FMS then sought coverage from its insurer, Scottsdale Indemnity Company.  Laitinen Aff. Ex. 20.  Scottsdale accepted the tender on November 19, 2009.  Id. Ex. 8 at 25:5-23; Ex. 21.  FMS requested that Bowman and Brooke, LLP serve as lead counsel.  Id. Ex. 26, at 4.  Scottsdale agreed but required FMS to pay any amounts exceeding the approved partner rate.  Id. Ex. 3, at 87:20-88:23; Ex. 7, at 29:5-9.

During the course of the Brill-FMS Litigation, FMS became a wholly owned subsidiary of Cargill, Inc.  Id. Ex. 1, at 32:4-6, 80:4-12.  Cargill assumed management of the lawsuit after the

merger but did not contribute to the cost of the defense.  Id. at 216:20-217:2; Ex. 11, at 35:15-20.  Instead, Cargill, FMS, and FMS's Series A Shareholders created an escrow account to jointly fund the litigation with Scottsdale.  Id. Ex. 10 § 4; Ex. 11, at 35:19-20.  The Series A Shareholders agreed to contribute $500,000 from their merger proceeds to the escrow account.  Id. Ex. 10 § 4(a).

On August 6, 2012, the court granted summary judgment to FMS. Reitenour Decl. Ex. P.  During the litigation, FMS had incurred $1,133,815.36 in fees, costs and other expenses.  See id. Ex. Q, at 12.  Bowman & Brooke alone billed $1,077,880.30.  Id.  Three other law firms also provided services.  Id.  Nall & Miller, LLP served as local counsel, billing a total of $10,667.56.  Id.  Soffer-Charbonnet Law Group assisted FMS in seeking indemnification from Scottsdale and Comco, and charged $19,350.  Id.  Lommen Abdo, LLP billed $25,917.50 for representing the Series A Shareholders during the Cargill merger.  Id.

FMS, the Series A Shareholders, and Scottsdale jointly paid for the cost of the Brill-FMS Litigation.  Specifically, FMS paid $68,000 of the $1,088,547.86 billed by Bowman & Brooke and Nall & Miller, while Scottsdale paid $859,144.69 and the Series A Shareholders paid $161,403.17.  Id. Ex. S (Ex. L); Laitinen Aff. Ex. 17 at 17:20-24, 19:5-9.  In addition, FMS paid the $19,350 billed by Soffer-Charbonnet, and the Series A Shareholders paid the

$25,917.50 billed by Lommen Abdo. Id. Ex. V; Ex. W. As a result, Scottsdale paid $859,144.69, the Series A Shareholders paid $187,320.67, and FMS paid $87,350 of the total amount incurred during the lawsuit.

On January 30, 2013, FMS again wrote to Comco demanding indemnification under the Management Agreement. Reitenour Decl. Ex. X. FMS filed the instant complaint on March 14, 2013, alleging breach of contract. Specifically, FMS alleges that Comco breached the Management Agreement by failing to (1) obtain a release for FMS while settling the Brill-Comco Litigation, and (2) provide indemnification for fees and other expenses that were incurred during the Brill-FMS Litigation. FMS moves for summary judgment on the indemnification claim, and Comco moves for summary judgment on both claims.

## DISCUSSION

## I.    Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could

cause a reasonable jury to return a verdict for either party.  Id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. Id. at 255.  The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial.  Celotex, 477 U.S. at 324.  A party asserting that a genuine dispute exists - or cannot exist - about a material fact must cite "particular parts of materials in the record."  Fed R. Civ. P. 56(c)(1)(A).  If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial.  Celotex, 477 U.S. at 322-23.

## II.  Failure to Release

FMS first argues that Comco breached the Management Agreement by failing to obtain a release for FMS when settling the Comco-Brill Litigation.  The court disagrees.  Under the terms of the Management Agreement, Comco was required to obtain a release for FMS when settling "any pending or threatened claim, action or proceeding," but only if FMS was "a party thereto or has been actually threatened to be made a party thereto."  Reitenour Decl. Ex. E § 5.  There is no evidence in the record that Brill threatened to sue FMS - or that Comco knew of any such threats - at

8

any time before Comco reached settlement with Brill.  FMS alleges
Comco was notified that Brill intended to bring a suit against FMS,
and that the terms of the settlement agreement expressly reserved
Brill's right to do so.  See Compl. ¶¶ 37-41.  These allegations,
however, are not supported by the record.  As a result, summary
judgment is warranted in favor of Comco on the failure-to-release
claim.

## III.  Failure to Indemnify

FMS next argues that Comco breached the Management Agreement
by failing to indemnify FMS for the attorney's fees and other
expenses incurred during the Brill-FMS Litigation.  As previously
stated, Comco was required to indemnify FMS

> from and against any and all losses, costs, expenses,
> claims, damages and liabilities whatsoever ... to which
> [FMS] may become subject under any applicable law, or any
> claim made by any third party, or otherwise, to the
> extent they relate to or arise out of or in connection
> with the performance of Services contemplated by this
> Agreement or the engagement of FMS pursuant to, and the
> performance by FMS of the Services contemplated by, this
> Agreement.

Reitenour Decl. Ex. E § 5.  Comco responds that the indemnity
provision did not cover Brill's claims against FMS because those
claims (1) did not relate to the performance of services under the
Management Agreement, and (2) were premised on allegations of
intentional misconduct.

**A.   Scope of the Indemnity Provision**

Comco interprets the indemnity provision to require indemnification for claims that relate to, arise out of, or are asserted in connection with the performance of "services" by FMS. By its plain language, however, Comco must also indemnify FMS for claims that relate to, arise out of, or are asserted in connection with "the engagement of FMS pursuant to" the Management Agreement. Comco's interpretation, which ignores this additional language, is untenable.  See Am. Bank of St. Paul v. Coating Specialties, Inc., 787 N.W.2d 202, 205 (Minn. Ct. App. 2010) ("Unambiguous language must be accorded its plain and ordinary meaning.").

The court finds that all of Brill's claims against FMS related to, arose out of, or were asserted in connection with the engagement of FMS pursuant to, or the performance by FMS of services contemplated by, the Management Agreement.  For example, the tortious interference claims alleged that FMS used the Management Agreement to gain "unfettered access to the Distribution Network."  See Reitenour Decl. Ex. F ¶¶ 64, 75.  The claims for fraud and unjust enrichment accused FMS of making representations and omissions during an August 2008 meeting with Brill, which was held pursuant to the Management Agreement.  Id. ¶¶ 80-93, 100-09. Indeed, every claim either relied on actions that FMS took in furtherance of the services that it performed under the Management Agreement, or alleged that the engagement of FMS pursuant to the

Management Agreement constituted an assignment of Comco's rights and obligations under the Comco-Brill Agreement.  See, e.g., id. ¶¶ 62, 64, 73, 75, 83, 90, 95, 106, 111, 119, 125, 135.  As a result, the court finds that Comco had a duty to indemnify FMS for every claim asserted by Brill.[2]

Comco also argues that it had no duty to indemnify FMS for fees incurred pursuing its counterclaims and responding on Cargill's behalf to a subpoena and multiple motions to compel.[3] The court disagrees.  As previously stated, Comco was required to reimburse FMS for all reasonable fees that it "incurred in connection with ... any action or proceeding arising" from the "investigation of, preparation for or defense of any pending or threatened claim for which [FMS] would be entitled to indemnification."  Reitenour Decl. Ex. E § 5.  The costs of pursuing the counterclaims were incurred in the same "action or proceeding" as the claims brought by Brill and are therefore subject to indemnification under the plain language of the

---

[2] The court rejects Comco's argument that it is not required to indemnify FMS for events that occurred before and after the Management Agreement was in effect.  Those events comprised a small part of the facts supporting Brill's claims, and FMS was not required to seek indemnification on a fact-by-fact basis.

[3] Bowman & Brooke represented Cargill in its response, and the cost of that representation was billed along with the other Bowman & Brooke fees.  See, e.g., Laitinen Aff. Ex. 15, at 50-55.

provision.[4]   Likewise, Brill served the subpoena and motions to compel in furtherance of its own claims and in defense of the counterclaims brought by FMS, and as a result, the costs of Cargill's response are also subject to the indemnity provision. See Reitenour Decl. Ex. CC at 92:21-93:23.

**B.   Claims Premised on Intentional Conduct**

Comco next argues that it was not required to indemnify FMS because Brill alleged that FMS engaged in intentional misconduct. The court disagrees.  Indemnity provisions that shift liability for an indemnitee's own misconduct are strictly construed.[5] Harleysville Ins. Co. v. Physical Distrib. Servs., Inc., 716 F.3d 451, 457 (8th Cir. 2013) (citing Farmington Plumbing & Heating Co.

---

[4]  Comco notes that an insurer's duty to defend does not require it to "pay for fees related to an insured's assertion of affirmative claims." See St. Paul Fire & Marine Ins. Co. v. Flynn, No. C8-96-990, 1996 WL 622759, at *1 (Minn. Ct. App. Oct. 29, 1996).   The court will not apply this reasoning to Comco's contractual duty to indemnify because such a restriction would be contrary to the plain language of the indemnity provision.

[5] The court notes that the provision did not actually shift liability for misconduct by FMS, because FMS was not found liable for the conduct that Brill alleged.  It is therefore questionable that the provision should be strictly construed.  See Maverick Fin. Grp., Inc. v. State Bank of Loretto, No. C8-02-692, 2002 WL 31749161, at *5 (Minn. Ct. App. Dec. 10, 2002) (rejecting argument that indemnity provision was not enforceable as to intentional torts, where the record did not support a finding of liability for those claims); Seifert v. Regents of Univ. of Minn., 505 N.W.2d 83, 85-86 (Minn. Ct. App. 1993) (holding that allegation of negligence did not invalidate indemnity provision under Minnesota Statutes § 337.02, where no evidence was submitted to show negligence). FMS, however, does not argue against a strict construction, and the court finds that the provision is enforceable even when strictly construed.

v. Fischer Sand & Aggregate, Inc., 281 N.W.2d 838, 842 (Minn.
1979)).  "An indemnification provision will only be enforceable if
its language is 'clear and unequivocal.'"  Id. (quoting Nat'l Hydro
Sys. v. M.A. Mortenson Co., 529 N.W.2d 690, 694 (Minn. 1995)).
"[T]o shift liability, an indemnification provision must 'fairly
apprise[] [the indemnitor] of an obligation to indemnify [the
indemnitee].'"  Id. (quoting Yang v. Voyagaire Houseboats, Inc.,
701 N.W.2d 783, 791-92 n.5 (Minn. 2005)).

The court finds that the language in the indemnity provision
notified Comco of its obligation to indemnify FMS for the claims
asserted by Brill.  Comco was required to indemnify FMS for "any
and all ... claims ... to which [FMS] may become subject under any
applicable law ...."  Reitenour Decl. Ex. E § 5.  Indeed, courts
have held that even narrower language is sufficient to shift
liability.  See Harleysville, 716 F.3d at 456-58 (enforcing
provision which applied to "any and all claims, actions, or causes
of action in any way relating to personnel assigned to [the
indemnitee]"); Osgood v. Med., Inc., 415 N.W.2d 896, 902-03 (Minn.
Ct. App. 1987) (enforcing provision covering "any claims for
damages ... which might arise from use of any component to be
supplied under this agreement"); Johnson v. McGough Constr. Co.,
294 N.W.2d 286, 287-88 (Minn. 1980)[6] (enforcing provision which

---

[6] Johnson has been superseded by statute in the context of
building and construction contracts, see Minn. Stat. § 337.02, but
                                              (continued...)

applied to "all such claims including ... claims for which the Contractor may be, or may be claimed to be, liable").

Comco argues that the provisions in the above cases are distinguishable because they expressly refer to claims based on personal injury or property damage, which are often premised on an indemnitee's negligence. The court finds this distinction immaterial. The provision at issue requires indemnification for costs incurred in defense of "any and all claims" brought "under any applicable law." Even under a strict construction, this language covers all claims related to the engagement of FMS pursuant to, and the performance of FMS of the services contemplated by, the Management Agreement, regardless of the theory of law supporting the claim.[7] As a result, summary judgment is warranted in favor of FMS on this claim.

## IV.  Damages

Comco next argues that, even if it breached the Management Agreement, FMS cannot recover the entire $1,133,815.36 billed during the Brill-FMS Litigation. Specifically, Comco argues that

---

[6](...continued)
remains applicable here.

[7] Comco also argues that the provision is void because it exculpates FMS for intentional acts. Because there was no finding that FMS actually engaged in the alleged misconduct, the court disagrees. See Gage v. HSM Elec. Prot. Servs., Inc., 655 F.3d 821, 825 (8th Cir. 2011) (stating that a plaintiff who argues on summary judgment that an exculpatory clause is void must show a fact issue as to the defendant's alleged conduct).

14

FMS cannot recover (1) fees that were paid by Scottsdale, (2) fees that were paid by the Series A Shareholders, and (3) fees that were unreasonably incurred.  As stated, Scottsdale paid $859,144.69 of the total amount billed during the lawsuit, while the Series A Shareholders paid $187,320.67 and FMS paid $87,350.

### A.   Scottsdale Fees

Comco first argues that FMS did not suffer any loss for the fees and other expenses that were paid by Scottsdale, and as a result, those amounts cannot be recovered as contract damages.  The court agrees.  "The appropriate measure for breach-of-contract damages is the amount that will place the nonbreaching party in the same position [it] would be in had the contract been performed." Kellogg v. Woods, 720 N.W.2d 845, 853 (Minn. Ct. App. 2006).  "It is a well-settled principle of contract law that a nonbreaching party is duty-bound to use reasonable diligence to mitigate damages." Deutz-Allis Credit Corp. v. Jensen, 458 N.W.2d 163, 166 (Minn. Ct. App. 1990).

Although Comco breached the Management Agreement by failing to indemnify FMS, FMS mitigated its damages by successfully tendering defense to Scottsdale.  Under the circumstances, awarding the Scottsdale fees in this action would result in a substantial windfall to FMS.  See Hubbard Broad., Inc. v. Loescher, 291 N.W.2d 216, 223 (Minn. 1980) ("[N]o one shall profit more from the breach of an obligation than from its full performance." (quotation

omitted)). As a result, FMS cannot recover the $859,144.69 paid by Scottsdale.[8]

### B.  Series A Shareholder Fees

Comco next argues that FMS cannot recover any fees that were paid by the Series A Shareholders.  The court agrees.  "[A] corporation is a separate legal entity from its owners and shareholders." West Bend Mut. Ins. Co. v. Allstate Ins. Co., 776 N.W.2d 693, 706 (Minn. 2009).  As a result, a corporation cannot sue on behalf of its shareholders. Singer v. Allied Factors, Inc., 13 N.W.2d 378, 446 (1944); see also Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp., 276 F.3d 1032, 1050 (8th Cir. 2002) ("[A] corporation has no standing to assert rights belonging to its shareholders.") (citing Waseca Co. Bank v. McKenna, 21 N.W. 556 (Minn. 1884)).  The Series A Shareholders contributed to an escrow account to help finance the Brill-FMS Litigation. See Laitinen Aff. Ex. 10 § 4.  FMS therefore did not

---

[8] FMS argues that a plaintiff is permitted to seek the full amount of its insured losses from a wrongdoer who caused the loss, even though the plaintiff has been partially compensated by its insurer.  See Braniff Airways v. Falkingham, 20 F.R.D. 141, 144 (D. Minn. 1957); Lines v. Ryan, 272 N.W.2d 896, 903 (Minn. 1978); Flor v. Buck, 248 N.W. 743, 744 (Minn. 1933).  This authority is inapplicable, however, because FMS is not seeking recovery from Brill, the party that caused the loss.  Rather, FMS is suing a separate party pursuant to a breach of contract.  See Andrew L. Youngquist, Inc. v. Cincinatti Ins. Co., 625 N.W.2d 178, 186-88 (Minn. Ct. App. 2001) (prohibiting recovery of attorney's fees from the insurer of a non-party, even though the non-party was contractually obligated to provide insurance, because the plaintiff had been reimbursed by its own insurer).

incur any loss for the fees that were paid by the shareholders. Nor can FMS recover those amounts on the shareholders' behalf. Allowing recovery would therefore result in an impermissible windfall to FMS. See Hubbard, 291 N.W.2d at 223. As a result, FMS cannot recover the $187,320.67 paid by the Series A Shareholders.

## C.  Reasonableness of the Remaining Fees

Comco next argues that the court should, as a matter of law, reduce any fees that were unreasonably incurred.[9] Because FMS cannot recover the fees and other expenses that were paid by Scottsdale and the Series A Shareholders, Comco's argument is limited to the $87,350 paid by FMS. Comco does not contest the $19,350 billed by Soffer-Charbonnet. The court's analysis is therefore limited to the $68,000 billed by Bowman & Brooke and Nall & Miller.[10] The record shows that FMS was responsible for paying the relevant fees and other expenses from the time the lawsuit commenced until August 30, 2010, when the Series A Shareholders began contributing to the litigation. See Reitenour Decl. Ex. S (Ex. L); Laitinen Aff. Ex. 15, at 1-70.

---

[9] Although the issue of whether FMS may recover attorney's fees and costs is a substantive matter governed by state law, "the method of quantifying a reasonable fee is a procedural issue governed by federal law in a diversity suit." BP Grp., Inc. v. Capital Wings Airlines, Inc., No. 09-2040, 2011 WL 4396938, at *1 (D. Minn. Sept. 21, 2011) (citation and internal quotation marks omitted).

[10] Comco admits that the $10,667.56 in fees billed by Nall & Miller are reasonable. It is unclear from the record, however, what portion of those fees were paid by FMS.

17

"The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." <u>Haniq v. Lee</u>, 415 F.3d 822, 825 (8th Cir. 2005) (citation and internal quotation marks omitted).   In calculating the reasonable number of hours expended, the court excludes hours that are "excessive, redundant, or otherwise unnecessary." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 434 (1983).   Although Comco agrees that Bowman & Brooke charged reasonable rates, it argues that the firm spent an unreasonable amount of time on the litigation in light of the damages sought and baseless nature of Brill's claims.

The court has reviewed the Bowman & Brooke invoices and finds that a reduction of the $68,000 in fees and other expenses is not warranted.   The record shows that, during the early stages of the litigation, FMS was required to spend significant time and expense responding to aggressive discovery and motion practice by Brill. The court therefore finds that FMS is entitled to recover as damages the entirety of the $87,350 in fees and other expenses that it paid during the Brill-FMS Litigation.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1.   Plaintiff's motion for summary judgment [ECF No. 38] is granted in part;

2.    Defendants' motion for summary judgment [ECF No. 43] is granted in part; and

3.    Judgment is entered in favor of plaintiff and against defendants in the amount of $87,350.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  March 17, 2015

s/David S. Doty
David S. Doty, Judge
United States District Court